EXHIBIT "1"

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIGUEL ONOFRE-MORENO, GABRIEL ONOFRE, and RIGOBERTO FLORES,<br><br>Plaintiff,<br><br>v.<br><br>ARCHWAY ON PEARL, INC. *d/b/a* ARCHWAY CAFÉ, ARCHWAY ON WATER CORP. *d/b/a* ARCHWAY CAFÉ, ARTHUR HASANI a/k/a ARTUR HASANI, and QERIME MARKE,<br>Defendants. | Case No. 1:18-CV-4440<br><br>**SETTLEMENT AGREEMENT AND RELEASE** |

This Settlement Agreement and Release ("Agreement") is made by: MIGUEL ONOFRE-MORENO, GABRIEL ONOFRE, and RIGOBERTO FLORES ("Plaintiffs") individually and on behalf of their present and former representatives, agents, attorneys, heirs, executors, administrators, successors, and assignors, and ARCHWAY ON PEARL, INC. d/b/a ARCHWAY CAFÉ, ARCHWAY ON WATER CORP. d/b/a ARCHWAY CAFÉ, ARTUR HASANI a/k/a ARTUR HASANI, ("Defendants" or "Releasing Parties"), individually and on behalf of their present and former directors, officers, partners, owners, representatives, agents, attorneys, parents, subsidiaries, affiliates, successors, heirs, executors, administrators, successors, and assignors. Plaintiff and Defendant are collectively referred to hereafter as "Settlement Parties."

WHEREAS, on or about August 7, 2018, MIGUEL ONOFRE-MORENO, GABRIEL ONOFRE, and RIGOBERTO FLORES on behalf of themselves and similarly situated employees, commenced an action by filing a Complaint encaptioned MIGUEL ONOFRE-MORENO, GABRIEL ONOFRE, and RIGOBERTO FLORES, Civil Action No. 18-cv-04440 in the United States District Court Eastern District of New York ("Litigation"); and

1

WHEREAS, the Settlement Parties have determined it to be in their mutual interests to settle any and all claims or other matters arising out of Plaintiffs' employment; and

WHEREAS, Plaintiffs and Defendants have determined it to be in their mutual interest to dismiss the Litigation with prejudice;

NOW, THEREFORE, for good and valuable consideration, the receipt of which is acknowledged hereby, and in consideration of the mutual covenants and undertakings set forth herein, the Settlement Parties agree as follows:

1. Mutual Release of Claims

   1.1. Plaintiffs fully and unconditionally release and forever discharge Defendants from any and all causes of action, suits, damages, claims, judgments, interest, attorneys' fees, liquidated damages, punitive damages, costs and expenses whatsoever relating to, or in connection with, any claims under the Fair Labor Standards Acts (FLSA); any claims under New York Labor Law ("NYLL"); any claims under the New York Codes, Rules and Regulations, Articles 6, 7 and 19 of the New York Labor Law;.; any claims under any other federal, state or local wage and hour law; and any claims for reimbursement, wages, vacation or other leave time through the effective date of this Agreement (which shall be the date that the Court approves the terms of the Agreement).

   1.2. Defendants fully and unconditionally release and forever discharges Plaintiffs, from any and all causes of action, suits, damages, claims, judgments, interest, attorneys' fees, liquidated damages, punitive damages, costs and expenses whatsoever relating to, or in connection with, any claims under the Fair Labor Standards Acts (FLSA); any claims under New York Labor Law ("NYLL"); any claims under the New York Codes, Rules and Regulations, Articles 6, 7 and 19 of the New York Labor Law; any claims under any other federal, state or

local wage and hour law; and any claims for reimbursement, wages, vacation or other leave time through the effective date of this Agreement (which shall be the date that the Court approves the terms of the Agreement).

1.3 This release does not bar a claim that a term of this Agreement has been materially violated.

2.   Termination of the Litigation

Plaintiffs agree to terminate, discontinue, and dismiss the Litigation in its entirety and in each and every respect, with prejudice, and to cooperate and to take all necessary and appropriate action to accomplish same consistent with the terms of this Agreement. In that connection, Defendants' counsel will execute and deliver to Plaintiffs' Counsel a Stipulation of Dismissal with Prejudice ("Stipulation") in the form of the attached Exhibit A, voluntarily dismissing the Litigation with prejudice. The parties counsel shall file the fully-executed Stipulation immediately upon Court approval of the settlement agreement. The parties agree that Plaintiffs' counsel has the right to restore the action to the docket for non-payment and that in the event the case has to be restored the defendants and liability is found, defendants shall have a credit for any payments which have been made; upon completion of payments Plaintiffs agree to file a motion or stipulation to amend the caption removing defendant QERIME MARKE from the caption of the action and from the litigation.

2.1   Notice For Default

Should a Default occur, Plaintiffs, or their counsel, shall provide Defendants with written notice specifying such default ("Notice of Default") via email to Arthur Hasani, at **archwaycafe2@gmail.com**. Should the Default remain uncured for a period of ten (10) business days after the date on which Plaintiffs or their counsel sent the Notice of Default ("Cure

3

Period"), Plaintiffs may move the Court to restore the case to the docket as specified in Section 2.

3. Monetary Consideration

   3.1. The total monetary consideration to be paid by Defendants to Plaintiffs shall be $145,000 ("Total Settlement Amount") which shall be paid in twelve (12) installments memorialized in the annexed Exhibit C. All post-dated installment checks for the Total Settlement Amount shall be payable to "Cilenti & Cooper, PLLC, as attorneys", and delivered to Plaintiffs' counsel, Cilenti and Cooper PLLC as attorneys, 10 Grand Central, 155 East 44th Street, - 6th Floor New York, New York 10017 within thirty (30) days of Court approval of the (the "Approval Date") and presented for payment not before the dates indicated on such checks. Cilenti & Cooper, PLLC shall be solely responsible for distributing the payments according to the schedule (Exhibit "C").

   3.2. Tax Payment Procedures

   (a) Plaintiffs' counsel shall provide Defendants with the appropriate signed IRS W2 and W9 forms within fifteen (15) days of the Approval date.

   (b)   Although Plaintiffs and Defendants believe, in good faith, that the tax treatment of the payments referred to in this Agreement and the procedures set forth in this Agreement are proper and in compliance with applicable tax regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that Plaintiffs and/or Defendants are liable for any failure to pay federal, state or local income or employment taxes with respect to the payments made under Section 2.1 of this Agreement, or liable for interest or penalties related thereto,

4

Plaintiffs and Defendants shall each be responsible for their own portion of any such liability and their own legal fees incurred in determining such liability.

(c)     Plaintiffs acknowledge and agree that (i) this settlement may result in taxable income to Plaintiffs under applicable federal, state and local tax laws; (ii) Defendants are providing no tax, accounting or legal advice to Plaintiffs, and make no representations regarding any tax obligations or tax consequences on Plaintiffs' part relating to or arising from this Agreement; (iii) Plaintiffs shall be solely responsible for all of their respective individual tax obligations, including, without limitation, all federal, state and local taxes, and Plaintiffs shall not seek any indemnification from Defendants with respect thereto; and (iv) Plaintiffs have been advised that Defendants must comply with their obligations to make reports of such taxable income to the appropriate federal, state and local tax authorities, and issue IRS Forms as appropriate.

4.     Non-Admission of Liability

The execution of this Agreement shall not be construed as an admission of any liability whatsoever by the Defendants. Plaintiffs will not claim to be a prevailing party, to any degree or extent.

5.     Non- Disparagement. Plaintiffs agree that they will not make statements whether written or oral, or electronic which disparage or encourage or induce others to disparage any of the Released Parties. For the purposes of this Agreement, the term "disparage" includes, without limitation, comments or statements made to peers in person to other person(s), on the internet including email(s) or other internet sites including social media platforms Facebook ™, Instagram ™, Twitter ™, and all other social media platforms, to the press and/or media, to any Released Party or to any individual or entity with whom any of the Released Parties have a

business relationship which would adversely affect in any manner (i} the conduct of the business of any of the Released Parties (including, without limitation, any business plans or prospects) or (ii) the business or personal reputations of the Released Parties. This Paragraph does not apply to truthful statements compelled by this litigation civil action no. 18-cv-4440, applicable law or legal process, or to any statements made to a government agency or regulator. Plaintiffs agree they will not disparage Individual or Corporate Defendants and Individual Defendants agree that they shall likewise not disparage Plaintiffs.

    5.1.    <u>Governing Law</u>. This Agreement shall be construed as a whole in accordance with its fair meaning and in accordance with the laws of the State of New York (without regard to its choice of law principles), as are applied to contracts to be performed wholly within the State of New York.

    5.2.    <u>Descriptive Headings</u>. The headings used herein are for reference only and shall not in any way affect the meaning or interpretation of this Agreement.

    5.3.    <u>Severability</u>. In the event that any one or more of the provisions of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remainder of the Agreement shall not in any way be affected or impaired thereby. Moreover, if any one or more of the provisions contained in this Agreement shall be held to be excessively broad as to duration, activity or subject, including but not limited to the release set forth in Section 2 of this Agreement, such provisions shall be construed by limiting and reducing them so as to be enforceable to the maximum extent allowed by applicable law.

    5.4.    <u>Entire Agreement</u>. This Agreement represents the sole and entire agreement between the Settlement Parties and supersedes all prior agreements, negotiations and discussions

between the Settlement Parties hereto, and their respective counsel, with respect to the subject matters covered hereby.

    5.5.   Drafter of this Agreement. In recognition of the fact that the Settlement Parties hereto had an equal opportunity to negotiate the language of, and draft this Agreement, the Settlement Parties acknowledge and agree that there is no single drafter of this Agreement and therefore, the general rule that ambiguities are to be construed against the drafter is, and shall be, inapplicable. If any language in this Agreement is found or claimed to be ambiguous, each party shall have the same opportunity to present evidence as to the actual intent of the Settlement Parties with respect to any such ambiguous language without any interference or presumption being drawn against any party.

    5.6.   Amendments. Any amendment to this Agreement must be in writing signed by duly authorized representatives of each of the Settlement Parties hereto and stating the intent of each party to amend the Agreement. Any written changes must be approved by the Court.

    5.7.   Counterparts. This Agreement may be executed by each party in separate counterparts, each of which shall constitute an original and the sum of which shall constitute one document. A copy of a signature shall have the same force and effect as an original.

    5.8   Limited Confidentiality. Plaintiffs agree that the monetary sums received in settlement shall remain confidential not be discussed whether written, orally, or electronically with any person(s). This clause shall not limit the plaintiffs in any way from discussing they brought an overtime lawsuit against the Corporate Defendants in the Eastern District of New York civil action no 18-cv-4440, only that the monetary sums received shall not be discussed with any third parties other than their lawyers, spouses, and relevant accounting professionals. For the purposes of this Agreement, the term "discuss" includes, without limitation, comments or

statements made to peers in person to other person(s), on the internet including email(s) or other internet sites including social media platforms Facebook ™, Instagram ™, Twitter ™, and all other social media platforms, to the press and/or media, to any Released Party or to any individual or entity, or third party not listed herein.

6. <u>No Pending Actions</u>. Plaintiffs and Plaintiffs' counsel agree and represents that other than the Civil Action 18-cv-04440, they have not filed and do not have any pending charges, complaints, suits, or claims of any nature with any local, state, federal, or foreign agency or court, including but not limited to the United States Department of Labor or the New York State Department of Labor, against Defendants. Plaintiffs further agrees that in exchange for the promises and benefits provided in this Agreement, they will not file any such claims in the future concerning any matter released by virtue of this Agreement, and he has not or will not transfer or assign any rights to bring any charges, complaints, suits, or claims of any nature against Defendants.

<u>7. Further Employee Acknowledgments</u>

7.1. Plaintiffs acknowledge having consulted with their attorneys before signing this Agreement and that this Agreement has given them an opportunity to do so and if applicable, I have been explained the terms of this settlement in Spanish and fully understand the terms set forth herein.

[ remainder of page left blank -- signature pages follow]

**I AFFIRM THAT I AM SIGNING THIS SETTLEMENT AGREEMENT AND RELEASE WITH A FULL UNDERSTANDING OF ITS TERMS.**

DATED: September 5, 2019            By: _____
                                         MIGUEL ONOFRE-MORENO

STATE OF NEW YORK       )
                        ) ss.:
COUNTY OF NEW YORK      )

On the 5th day of Sept. in the year 2019 before me, the undersigned personally appeared MIGUEL ONOFRE-MORENO, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf which the individual acted, executed the instrument.

_____
Notary Public

PETER H. COOPER
Notary Public, State of New York
No. 02CO5059941
Qualified in New York County
Commission Expires MAY 6, 2022

9

**I AFFIRM THAT I AM SIGNING THIS SETTLEMENT AGREEMENT AND RELEASE WITH A FULL UNDERSTANDING OF ITS TERMS.**

DATED: Sep. 5, 2019          By: _____
                                  GABRIEL ONOFRE

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

    On the 5th day of Sep. in the year 2019 before me, the undersigned personally appeared GABRIEL ONOFRE, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf which the individual acted, executed the instrument.

_____
Notary Public

    PETER H. COOPER
Notary Public, State of New York
    No. 02CO5059941
Qualified in New York County
Commission Expires MAY 6, 2022

**I AFFIRM THAT I AM SIGNING THIS SETTLEMENT AGREEMENT AND RELEASE WITH A FULL UNDERSTANDING OF ITS TERMS.**

DATED: __Sept 5.__, 2019       By: _____
                                         RIGOBERTO FLORES

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NEW YORK  )

On the 5th day of Sept. in the year 2019 before me, the undersigned personally appeared RIGOBERTO FLORES, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf which the individual acted, executed the instrument.

_____
Notary Public

PETER H. COOPER
Notary Public, State of New York
No. 02CO5059941
Qualified in New York County
Commission Expires MAY 6, 20 22

11

**I AFFIRM THAT I AM SIGNING THIS SETTLEMENT AGREEMENT AND RELEASE WITH A FULL UNDERSTANDING OF ITS TERMS.**

DATED: 09/05, 2019          By: _____
                                 ARTUR HASANI

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

On the 5th day of September in the year 2019 before me, the undersigned personally appeared ARTUR HASANI, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf which the individual acted, executed the instrument.

_____
Notary Public

ANTHONY R PORTESY
Notary Public, State of New York
No. 02PO6315932
Qualified in Suffolk County
Commission Expires December 08, 20__

12

**I AFFIRM THAT I AM SIGNING THIS SETTLEMENT AGREEMENT AND RELEASE WITH A FULL UNDERSTANDING OF ITS TERMS.**

DATED: 09/05, 2019      By: _____
                             ARCHWAY ON PEARL INC.

                         By: _____
                             ARTUR HASANI, PRESIDENT

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

On the 5th day of September in the year 2019 before me, the undersigned personally appeared Artur Hasani, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf which the individual acted, executed the instrument.

_____
Notary Public

13

EXHIBIT A

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MIGUEL ONOFRE-MORENO, GABRIEL ONOFRE, and RIGOBERTO FLORES,<br><br>  Plaintiff,<br><br>v.<br><br>ARCHWAY ON PEARL, INC. *d/b/a* ARCHWAY CAFÉ, ARCHWAY ON WATER CORP. *d/b/a* ARCHWAY CAFÉ, ARTHUR HASANI a/k/a ARTUR HASANI, and QERIME MARKE,<br><br>  Defendants. | Case No. 1:18-CV-4440<br><br>**STIPULATION     OF DISCONTINUANCE** |

Pursuant to Federal Rule of Civil Procedure 41(a) (1) (A) (ii), this action is hereby dismissed with prejudice, with the court retaining jurisdiction to enforce its terms.

Date:   New York, New York
        August 21, 2019

Anthony R. Portesy
Varacalli & Hamra LLP
32 Broadway Suite 1818
New York, NY 10002
Tel. 646-590-0571
aportesy@vhllp.com

Peter Cooper, Esq.
Clienti and Cooper PLLC
10 Grand Central - 6th FL
New York, NY 10017
Tel. 212-209-3933
pcooper@jcpclaw.com

**SO ORDERED:**

_____
United States Magistrate Judge

**EXHIBIT B**

14

**EXHIBIT B**

Settlement Payment Structure – Onofre v. Archway

| DATE | Payment to Cilenti & Cooper, PLLC, as attorneys | Distribution to MIGUEL ONOFRE-MORENO $34,300 | Distribution to GABRIEL ONOFRE $23,000 | Distribution to RIGOBERTO FLORES $38,200 | Distribution to Cilenti & Cooper, PLLC $49,500 |
|---|---|---|---|---|---|
| 10/15/19 | $45,000 | $10,654 | $7,145 | $11,851 | $15,350 |
| 11/15/19 | $8,333.33 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.83 |
| 12/15/19 | $8,333.33 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.83 |
| 1/15/20 | $8,333.33 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.83 |
| 2/15/20 | $8,333.33 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.83 |
| 3/15/20 | $8,333.33 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.83 |
| 4/15/20 | $8,333.33 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.83 |
| 5/15/20 | $8,333.33 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.83 |
| 6/15/20 | $8,333.33 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.83 |
| 7/15/20 | $8,333.34 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.84 |
| 8/15/20 | $8,333.34 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.84 |
| 9/15/20 | $8,333.34 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.84 |
| 10/15/20 | $8,333.34 | $1,970.50 | $1,321.25 | $2,195.75 | $2,845.84 |